Michael Pasquale, Esq.
Law Offices of Michael P. Pasquale, LLC
163 Madison Avenue, Suite 200-80
Morristown, New Jersey 07960
(973) 362-5344
Attorneys for Plaintiff,
Township of Lakewood

William Higgins, Esq.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444

-and-

Edward Dauber, Esq.
Greenberg Dauber Epstein & Tucker
One Gateway Center, Suite 600
Newark, NJ 07102
Tel: 973.643.3700
Co-counsel for Plaintiff,
Lakewood Tenants Organization, Inc.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TOWNSHIP OF LAKEWOOD, NEW JERSEY and LAKEWOOD TENANTS ORGANIZATION, INC., | Civil Action No. 3:15-cv-06325-MAS-DEA |
| Plaintiffs, | |
| v. | |
| JULIAN CASTRO, Secretary, United States Department of Housing and Urban Development, | **DECLARATION OF ALBERT AKERMAN IN SUPPORT OF PLAINTIFFS' ORDER TO SHOW CAUSE** |
| Defendant. | |

I, ALBERT AKERMAN, hereby declare as follows:

1.      I am the Mayor of the Township of Lakewood, New Jersey (the "Township"). Although I have been the Mayor of the Township before, I most recently became Mayor of the Township on January 1, 2015.  From my involvement in this matter and my review of the Township's business records, I have personal knowledge of the facts set forth in this Declaration. I make this Declaration in support of Plaintiffs' application for an Order to Show Cause in this matter.

2.      For almost 40 years, the Township has had a Section 8 housing assistance program called the Lakewood Township Residential Assistance Program (the "Program" or "LTRAP"), pursuant to certain Annual Contribution Contracts ("ACCs") between the Township and the U.S. Department of Housing and Urban Development ("HUD"). True and correct copies of the Township's initial ACC with HUD and its current ACC with HUD are attached as Exhibit A.

3.      From its inception, the Township has sub-contracted with Co-Plaintiff, Lakewood Tenants' Organization, Inc. ("LTO"), to administer the Program.

4.      The Program is very well run and has been extremely successful and well-received by both the approximately 8,400 Program beneficiaries and 800 participating Landlords, most of whom are Lakewood residents.

5.      As set forth more fully in the Declaration of Michael P. Pasquale (the "Pasquale Declaration") submitted herewith and in the Complaint in this matter, our attorneys met with HUD on February 10, 2015 to discuss the history of HUD's actions and its threat to terminate the Program.

2

6.      As set forth in Exhibit A to the Pasquale Declaration, HUD stated that it would consider a global resolution of the issues between the parties and agreed to "speak with us [Plaintiffs' attorneys] before taking any further action against Lakewood Township or LTO in regard to the issues we discussed, including any formal declaration by HUD that the Township is in default of the ACC."

7.      At no time after February 10, 2015 did HUD contact me, or, to my knowledge, the attorneys for the Township or other Township officials to, as stated in the Termination Letter (defined below), "resolve Lakewood's [alleged] ACC non-compliance with good faith negotiations."

8.      On or about Friday, August 7, 2015, I was contacted by Maria Maio-Messano, Field Office Director for the Newark Field Office of HUD, and was advised that in the following week (i.e. the week of August 10, 2015), HUD would begin transferring the Program to the Lakewood Housing Authority ("LHA"), effective September 1, 2015.

9.      The Township received a copy of a letter (the "Termination Letter") from HUD to Plaintiffs dated August 11, 2015, which was sent to Plaintiffs on August 12, 2015.  A true and correct copy of that letter is attached as Exhibit B.

10.      It is my understanding that the Termination Letter requires the Program to transfer to LHA (an authority currently administering approximately 833 units) all of the approximately 1,100 units that the Program is currently administering with the result being that LHA will go from administering approximately 833 units to approximately 2,000 units within a two-week time period.

11.      I am outraged that HUD would take such drastic actions without consulting with the Township and without any real need to take such drastic action.  The notion that LHA will be

3

able to adequately serve more than twice the number of vouchers and properly assist over eight thousand additional program beneficiaries in the course of a two-week transition time period is absurd.   HUD's action will jeopardize the housing of the most vulnerable residents of the Township, our low-income, elderly, disabled and children.   The Township has successfully operated the Program for more than 38 years to the benefit of those most vulnerable Township residents.   HUD has absolutely no good reason to destroy our successful and beneficial Program.

12.     HUD's actions will have a detrimental and lasting negative impact on the residents of the Township.   I respectfully request that the Court stop HUD's senseless and reckless actions.

13.     Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August _____20_____, 2015.

_____
ALBERT AKERMAN

4

# EXHIBIT A



U. S. Department of Housing and Urban Development

New Jersey State Office
Thirteenth Floor
One Newark Center
Newark, NJ 07102-5260

JUL 2 1 1998

Mr. Meir N. Hertz, PHM
Executive Director
Lakewood RAP
600 W. Kennedy Blvd.
P.O. Box 856
Lakewood, NJ  08701

Dear Mr. Hertz:

Subject:   Amendment to the Annual Contributions Contract
           Project No.  NJ214-VO-0015 (Renewal)
                        NJ214-VO-0016 (Renewal)

     Enclosed is an executed copy of the Amendment to your
Annual Contract.

     If you have any questions, please contact Sharon Smith of my
staff at (973) 622-7900 extension 3630.

                              Sincerely,

                              Carmen Valenti
                              Director
                              Office of Public Housing

Enclosure

Visit our Web Site at:   http://www.hud.gov/local/njn/njnhome.html

PHA

# Consolidated Annual Contributions Contract

Rental Certificate and Rental Voucher Programs

**U.S. Department of Housing and Urban Development**
**Office of Public and Indian Housing**

Section 8

Lakewood RAP
NJ214VO 0015 (Renewal)
NJ214VO 0016 (Renewal)

**Table of Sections** page

1. Definitions ................................................. 1
2. Funding for HA Certificate or Voucher Program ............ 1
3. Term ...................................................... 2
4. HUD Payments for Program .................................. 2
5. Maximum Payments for Program .............................. 2
6. Reduction of Amount Payable by HUD ........................ 2
7. ACC Reserve Account ....................................... 2
8. Separate ACC for Funding Increment ........................ 2
9. Budget and Requisition for Payment ....................... 2
10. HUD Requirements ......................................... 2

11. Use of Program Receipts .................................. 2
12. Administrative Fee Reserve ............................... 3
13. Depositary ............................................... 3
14. Program Records .......................................... 3
15. Default by HA ............................................ 3
16. Fidelity Bond Coverage ................................... 3
17. Exclusion from Program ................................... 3
18. Exclusion of Third Party Rights .......................... 4
19. Consolidated ACC ......................................... 4

## 1. Definitions

**ACC** Annual contributions contract.

**ACC Reserve Account** An account established by HUD for a program from amounts by which the maximum payment to the HA under the consolidated ACC (during a HA fiscal year) exceeds the amount actually approved and paid. This account is used as the source of additional payments for the program.

**Annual Contributions Contract** The contract for each funding increment. HUD's commitment to make payments for each funding increment ("project") listed in the funding exhibit constitutes a separate ACC.

**Budget Authority** The maximum amount of funds available for payment to the HA over the term of a funding increment. Budget authority is authorized and appropriated by the Congress.

**Consolidated Annual Contributions Contract (consolidated ACC)** This consolidated contract for the HA certificate program and voucher program. HUD's commitment to make payments for each funding increment in a program constitutes a separate ACC. However, commitments for all the funding increments are listed in this consolidated ACC.

**Contract Authority** The maximum annual payment by HUD to the HA for a funding increment. The amount of contract authority for each funding increment in a program is listed in the funding exhibit for the program.

**Fiscal Year** The HA fiscal year. The funding exhibit states the last month and day of the HA fiscal year.

**Funding Exhibit** An exhibit to the consolidated ACC. The funding exhibit states the amount and term of funding for a program. There are separate funding exhibits for the HA certificate program and voucher program.

**Funding Exhibit A** The funding exhibit for the HA certificate program.

**Funding Exhibit B** The funding exhibit for the HA voucher program.

**Funding Increment (also called a "Project")** Each commitment of budget authority by HUD to the HA for a program under the consolidated ACC. The funding increments for the program are listed on the program funding exhibit.

**HA** Housing agency.

**Housing Agency (HA)** The agency that has entered this consolidated ACC with HUD.

**HUD** U.S. Department of Housing and Urban Development.

**Program** The HA certificate program or voucher program.

**Program Expenditures** Amounts which may be charged against program receipts in accordance with the consolidated ACC and HUD requirements.

**Program Receipts** Amounts paid by HUD to the HA for a program, and any other amounts received by the HA in connection with the program.

**Project** A funding increment for the program.

## 2. Funding for HA Certificate or Voucher Program

a. The funding increments in the HA certificate program or voucher program are listed in the funding exhibit for the program.

b. The amount of contract and budget authority for each funding increment in a program is stated in the program funding exhibit.

c. By giving written notice to the HA, HUD may revise the funding exhibit for a program:
   (1) To add a funding increment, or
   (2) To remove a funding increment for which the ACC term has expired.

d. The HUD notice must include a revised funding exhibit, specifying the term, contract authority and budget authority for each funding increment under the consolidated ACC. The HUD notice of a revised funding exhibit for a program constitutes an amendment of the consolidated ACC.

Form HUD-52520 (12/97)

3. Term
   a. The funding exhibit states the first date and last date of the ACC term for each funding increment.
   b. If the first or last date of the ACC term for a funding increment is not entered before the consolidated ACC is signed by the HA, HUD may enter the date subsequently by giving written notice to the HA.

4. HUD Payments for Program
   a. HUD will make payments to the HA for a program in accordance with HUD regulations and requirements.
   b. For each HA fiscal year, HUD will pay the HA the amount approved by HUD to cover:
      (1) Housing assistance payments by the HA for a program.
      (2) HA fees for administration of the program.
   c. The amount of the HUD payment may be reduced, as determined by HUD, by the amount of program receipts (such as interest income) other than the HUD payment.

5. Maximum Payments for Program
   a. Annual Limit   Except for payments from the consolidated ACC reserve account, the HUD annual payments for a program during a fiscal year must not be more than the sum of the contract authority amounts for the funding increments in the program.
   b. Limit on Payments for Funding Increment   The total amount of payments for any funding increment over the increment term must not exceed budget authority for the funding increment.

6. Reduction of Amount Payable by HUD
   a. If HUD determines that the HA has failed to comply with any obligations under the consolidated ACC, HUD may reduce to an amount determined by HUD:
      (1) The amount of the HUD payment for any funding increment.
      (2) The contract authority or budget authority for any funding increment.
   b. HUD must give the HA written notice of the reduction.
   c. The HUD notice must include a revised funding exhibit specifying the term, contract authority, and budget authority for each funding increment under the consolidated ACC. The HUD notice of revisions to the funding exhibit for a program constitutes an amendment of the consolidated ACC.

7. ACC Reserve Account
   An ACC reserve account may be established and maintained by HUD. The amount in the account is determined by HUD. The ACC reserve account may be used by HUD to pay any portion of the program payment approved by HUD for a fiscal year.

8. Separate ACC for Funding Increment

HUD's commitment to make payments for each funding increment ("project") listed in the funding exhibit constitutes a separate ACC.

Form HUD-52520 (12/97)

9. **Budget and Requisition for Payment**

   a. Each fiscal year, the HA must submit to HUD an estimate of the HUD payments for the program. The estimate and supporting data must be submitted at such time and in such form as HUD may require, and are subject to HUD approval and revision.

   b. The HA must requisition periodic payments on account of each annual HUD payment. Each requisition must be in the form prescribed by HUD. Each requisition must include certification that:

      (1) Housing assistance payments have been made in accordance with contracts in the form prescribed by HUD and in accordance with HUD requirements; and

      (2) Units have been inspected by the HA in accordance with HUD requirements.

   c. If HUD determines that payments by HUD to the HA for a fiscal year exceed the amount of the annual payment approved by HUD for the fiscal year, the excess must be applied as determined by HUD. Such applications, determined by HUD may include, but are not limited to, application of the excess payment against the amount of the annual payment for a subsequent fiscal year. The HA must take any actions required by HUD respecting the excess payment, and must, upon demand by HUD, promptly remit the excess payment to HUD.

10. **HUD Requirements**

   a. The HA must comply, and must require owners to comply, with the requirements of the U.S. Housing Act of 1937 and all HUD regulations and other requirements, including any amendments or changes in the law or HUD requirements.

   b. The HA must comply with its HUD-approved administrative plan, and HUD-approved program funding applications.

   c. The HA must use the program forms required by HUD.

   d. The HA must proceed expeditiously with the programs under this consolidated ACC.

11. **Use of Program Receipts**

   a. The HA must use program receipts to provide decent, safe, and sanitary housing for eligible families in compliance with the U.S. Housing Act of 1937 and all HUD requirements. Program receipts may only be used to pay program expenditures.

   b. The HA must not make any program expenditures, except in accordance with the HUD-approved budget estimate and supporting data for a program.

   c. Interest on the investment of program receipts constitutes program receipts.

   d. If required by HUD, program receipts in excess of current needs must be promptly remitted to HUD or must be invested in accordance with HUD requirements.

12. **Administrative Fee Reserve**

   a. The HA must maintain an administrative fee reserve for a program. The HA must credit to the administrative fee reserve the total of:

      (1) The amount by which program administrative fees paid by HUD for a fiscal year exceed HA administrative expenses for the fiscal year, plus

      (2) Interest earned on the administrative fee reserve.

   b. The HA must use funds in the administrative fee reserve to pay administrative expenses in excess of program receipts. If any funds remain in the administrative fee reserve, the HA may use the administrative reserve funds for other housing purposes if permitted by State and local law.

   c. If the HA is not adequately administering any Section 8 program in accordance with HUD requirements, HUD may:

      (1) Direct the HA to use the funds to improve administration of the Section 8 program or for reimbursement of ineligible expenses.

      (2) Prohibit HA use of administrative fee reserve funds.

13. **Depositary**

   a. Unless otherwise required or permitted by HUD, all program receipts must be promptly deposited with a financial institution selected as depositary by the HA in accordance with HUD requirements.

   b. The HA must enter an agreement with the depositary institution in the form required by HUD.

   c. The HA may only withdraw deposited program receipts for use in connection with the program in accordance with HUD requirements.

   d. The agreement with the depositary institution must provide that if required under a written notice from HUD to the depositary:

      (1) The depositary must not permit any withdrawal of deposited funds by the HA unless withdrawals by the HA are expressly authorized by written notice from HUD to the depositary.

      (2) The depositary must permit withdrawals of deposited funds by HUD.

   e. If approved by HUD, the HA may deposit under the depositary agreement monies received or held by the HA in connection with any contract between the HA and HUD.

14. **Program Records**

   a. The HA must maintain complete and accurate books of account and records for a program. The books and records must be in accordance with HUD requirements, and must permit a speedy and effective audit.

   b. The HA must furnish HUD such financial and program reports, records, statements, and documents at such times, in such form and accompanied by such supporting data as required by HUD.

Form HUD-52520 (12/97)

c. HUD and the Comptroller General of the United States, or their duly authorized representatives, must have full and free access to all HA offices and facilities, and to all the books, documents and records of the HA relevant to administration of the program, including the right to audit and to make copies.

d. The HA must engage and pay an independent public accountant to conduct audits that are required by HUD. The cost of audits required by HUD may be charged against program receipts.

## 15. Default by HA

a. Upon written notice to the HA, HUD may take possession of all or any HA property, rights or interests in connection with a program, including funds held by a depositary, program receipts, and rights or interests under a contract for housing assistance payments with an owner, if HUD determines that:

   (1) The HA has failed to comply with any obligations under this consolidated ACC; or

   (2) The HA has failed to comply with obligations under a contract for housing assistance payments with an owner; or

   (3) The HA has failed to take appropriate action, to HUD's satisfaction or as directed by HUD, for enforcement of the HA's rights under a contract for housing assistance payments (including requiring actions by the owner to cure a default, termination, or reduction of housing assistance payments, termination of the contract for housing assistance payments, or recovery of overpayments); or

   (4) The HA has made any misrepresentation to HUD of any material fact.

b. HUD's exercise or non-exercise of any right or remedy under the consolidated ACC is not a waiver of HUD's right to exercise that or any other right or remedy at any time.

## 16. Fidelity Bond Coverage

The HA must carry adequate fidelity bond coverage, as required by HUD, of its officers, agents, or employees handling cash, or authorized to sign checks or certify vouchers.

## 17. Exclusion from Program

Single-headed households, pregnant females, and recipients of public assistance may not be excluded from participation in or be denied the benefit of a program because of such status.

Form HUD-52520 (12/97)

**18. Exclusion of Third Party Rights**

a. A family that is eligible for housing assistance under this consolidated ACC is not a party to or third party beneficiary of the consolidated ACC.

b. Nothing in this consolidated ACC shall be construed as creating any right of any third party to enforce any provision of this consolidated ACC, or to assert any claim against HUD or the HA.

**19. Consolidated ACC**

a. The consolidated ACC is a contract between HUD and the HA.

b. This consolidated ACC supersedes any previous annual contributions contract for a program. Matters relating to funding or, operation of the program under a previous annual contributions contract are governed by this consolidated ACC.

---

**United States of America**   Secretary of Housing and Urban Development
Signature of Authorized Representative                    Date signed:

X _____                    7/21/58

Name & Official Title: (print or type)

---

**Housing Agency**   Name of Agency: (print or type)

Signature of Authorized Representative:                    Date signed:

X _____

Name & Official Title: (print or type)

---

page 5 of 4                                    Form HUD-52520  (12/97)

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
PIH SECTION 8 - FUNDING EXHIBIT
PROGRAM-BASED

ACC NUMBER: NJ214VO

FIELD OFFICE: 2FPH
OFFICE OF PUBLIC HOUSING

HA NUMBER: NJ214
LAKEWOOD TOWNSHIP
231 THIRD ST

LAKEWOOD          , NJ  087010000

HA FISCAL YEAR-END: 12/31

PROGRAM TYPE: VOUCHER PROGRAM

| FI NUMBER | FIRST DATE OF TERM | LAST DATE OF TERM | CONTRACT TERM | CONTRACT AUTHORITY | BUDGET AUTHORITY |
|---|---|---|---|---|---|
| NJ214V00008 | 10/01/93 | 09/30/98 | 60 | 251,449 | 891,851 |
| NJ214V00009 | 06/01/94 | 05/31/98 | 48 | 0 | 618,672 |
| NJ214V00010 | 09/01/94 | 08/31/98 | 48 | 268,535 | 1,074,140 |
| NJ214V00011 | 09/01/94 | 08/31/99 | 60 | 134,936 | 674,681 |
| NJ214V00012 | 04/01/97 | 03/31/98 | 12 | 0 | 1,230,600 |
| NJ214V00013 | 04/01/98 | 03/31/99 | 12 | 1,189,590 | 1,189,590 |
| NJ214V00014 | 06/01/98 | 05/31/99 | 12 | 139,680 | 139,680 |
| NJ214V00015 | 10/01/98 | 09/30/99 | 12 | 216,384 | 216,384 |
| NJ214V00016 | 09/01/98 | 08/31/99 | 12 | 235,200 | 235,200 |
| NJ214V06001 | 01/01/98 | 12/31/98 | 12 | 3,994 | 3,994 |
| NJ214V08001 | 05/01/98 | 04/30/99 | 12 | 74,502 | 74,502 |



**U. S. Department of Housing and Urban Development**

New Jersey State Office
Thirteenth Floor
One Newark Center
Newark, NJ 07102-5260

SEP 20 1995

Mr. Meir N. Hertz, Esq
Executive Director
LAKEWOOD PHA
P.O. Box 375
419 First St.
Lakewood, NJ 08701-0371

Dear Mr. Hertz:

Subject:   Amendment to the Annual Contributions
           Amendment No. 25
           Project No:   NJ-011-CE-0020 (RENEWAL)
                         NJ-014-CE-0001 (RENEWAL)

Enclosed you will find documents necessary to effectuate an
Amendment to the Annual Contributions Contract (ACC) for the above
referenced project.

Please return two (2) executed copies to this office at your
earliest convenience. Also, please submit a budget revision
incorporating all projects on the Funding Exhibit. A fully executed
copy will be returned to you at a later date.

If you have any questions, please contact the Financial Analyst
assigned to your PHA.

                                   Sincerely,

                                   Florence M. Claggon.
                                   Florence M. Claggon
                                   Director
                                   Finance and Budget Division
                                   Office of Public Housing

Enclosure

PHA

# Consolidated Annual Contributions Contract

Rental Certificate Program
and Rental Voucher Program

U.S. Department of Housing
and Urban Development
Office of Public and Indian Housing

*Lakewood RAP*

*NJ214 CE 0020 (RENEW*
*★ NJ214 CE 0021 (RENEWAL*

Section 8

*OF ★ MOD REHAB NJ39K2 PROJECT*

## Table of Sections

| | page |
|---|---|
| 1. Definitions | 1 |
| 2. Funding for HA Certificate or Voucher Program | 2 |
| 3. Term | 2 |
| 4. HUD Payments for Program | 2 |
| 5. Maximum Payments for Program | 2 |
| 6. Reduction of Amount Payable by HUD | 2 |
| 7. ACC Reserve Account | 2 |
| 8. Separate ACC for Funding Increment | 2 |
| 9. Budget and Requisition for Payment | 2 |
| 10. Depository | 3 |
| 11. Use of Program Receipts | 3 |
| 12. Administrative Fee Reserve | 3 |
| 13. Depositary | 3 |
| 14. Program Records | 3 |
| 15. Default by HA | 3 |
| 16. Fidelity Bond Coverage | 4 |
| 17. Exclusion from Program | 4 |
| 18. Conflict of Interest Provisions | 4 |
| 19. Interest of Member of or Delegate to Congress | 4 |
| 20. Exclusion of Third Party Rights | 4 |
| 21. Consolidated ACC | 4 |

## 1. Definitions

**ACC.** Annual contributions contract.

**ACC Reserve Account.** An account established by HUD for a program from amounts by which the maximum payment to the HA under the consolidated ACC (during a HA fiscal year) exceeds the amount actually approved and paid. This account is used as the source of additional payments for the program.

**Annual Contributions Contract.** The contract for each funding increment. HUD's commitment to make payments for each funding increment ("project") listed in the funding exhibit constitutes a separate ACC.

**Budget Authority.** The maximum amount of funds available for payment to the HA over the term of a funding increment. Budget authority is authorized and appropriated by the Congress.

**Consolidated Annual Contributions Contract (consolidated ACC).** This consolidated contract for the HA certificate program and voucher program. HUD's commitment to make payments for each funding increment in a program constitutes a separate ACC. However, commitments for all the funding increments are listed in this consolidated ACC.

**Contract Authority.** The maximum annual payment by HUD to the HA for a funding increment. The amount of contract authority for each funding increment in a program is listed in the funding exhibit for the program.

**Fiscal Year.** The HA fiscal year. The funding exhibit states the last month and day of the HA fiscal year.

**Funding Exhibit.** An exhibit to the consolidated ACC. The funding exhibit states the amount and term of funding for a program. There are separate funding exhibits for the HA certificate program and voucher program.

**Funding Exhibit A.** The funding exhibit for the HA certificate program.

**Funding Exhibit B.** The funding exhibit for the HA voucher program.

**Funding Increment (also called a "Project").** Each commitment of budget authority by HUD to the HA for a program under the consolidated ACC. The funding increments for the program are listed on the program funding exhibit.

**HA.** Housing agency.

**Housing Agency (HA).** The agency that has entered this consolidated ACC with HUD.

**HUD.** U.S. Department of Housing and Urban Development.

**Program.** The HA certificate program or voucher program.

**Program Expenditures.** Amounts which may be charged against program receipts in accordance with consolidated ACC and HUD requirements:

**Program Receipts.** Amounts paid by HUD to the HA for a program, and any other amounts received by the HA in connection with the program.

**Project.** A funding increment for the program.

form HUD-52520 (6/93)

## 2   Funding for HA Certificate or Voucher Program

(a)   The funding increments in the HA certificate program or voucher program are listed in the funding exhibit for the program.

(b)   The amount of contract and budget authority for each funding increment in a program is stated in the program funding exhibit.

(c)   By giving written notice to the HA, HUD may revise a funding exhibit:
   (1) To add a cost amendment project.
   (2) To remove a project for which the ACC term has expired.

## 3.   Term

(a)   The funding exhibit states the first date and last date of the ACC term for each funding increment.

(b)   If the first or last date of the ACC term for a funding increment is not entered before the consolidated ACC is signed by the HA, HUD may enter the date subsequently, by giving written notice to the HA

## 4.   HUD Payments for Program

(a)   HUD will make payments to the HA for a program in accordance with HUD regulations and requirements.

(b)   For each HA fiscal year, HUD will pay the HA the amount approved by HUD to cover:
   (1) Housing assistance payments by the HA for a program.
   (2) HA fees for administration of the program.

(c)   The amount of the HUD payment may be reduced, as determined by HUD, by the amount of program receipts (such as interest income) other than the HUD payment.

## 5.   Maximum Payments for Program

(a)   Annual Limit   Except for payments from the consolidated ACC reserve account, the HUD annual payments for a program during a fiscal year must not be more than the sum of the contract authority amounts for the funding increments in the program.

(b)   Limit on Payments for Funding Increment   The total amount of payments for any funding increment over the increment term must not exceed budget authority for the funding increment.

## 6.   Reduction of Amount Payable by HUD

(a)   If HUD determines that the HA has failed to comply with any obligations under the consolidated ACC, HUD may reduce to an amount determined by HUD:
   (1) The amount of the HUD payment for any funding increment.
   (2) The contract authority or budget authority for any funding increment.

(b)   HUD must give HA written notice of the reduction.

(c)   The HUD notice may include a revised funding exhibit to state the reduction in the amount of contract authority or budget authority for a funding increment. The notice of a revised funding exhibit, or of revisions to the   funding exhibit for a program constitutes an amendment of the consolidated ACC.

## 7.   ACC Reserve Account

An ACC reserve account may be established and maintained by HUD.  The amount in the account is determined by HUD. The ACC reserve account may be used by HUD to pay any portion of the program payment approved by HUD for a fiscal year.

## 8.   Separate ACC for Funding Increment

HUD's commitment to make payments for each funding increment ("project") listed in the funding exhibit constitutes a separate ACC.

## 9.   Budget and Requisition for Payment

(a)   Each fiscal year, the HA must submit to HUD and estimate of the HUD payments for the program.  The estimate and supporting data must be submitted at such time and in such form as HUD may require, and are subject to HUD approval and revision.

(b)   The HA must requisition periodic payments on account of each annual HUD payment.  Each requisition must be in the form prescribed by HUD:
   (1) Housing assistance payments have been made in accordance with contracts in the form prescribed by HUD and in accordance with HUD requirements; and
   (2) Units have been inspected by the HA in accordance with HUD requirements.

(c)   If HUD determines that payments by HUD to the HA for a fiscal year exceed the amount of the annual payment approved by HUD for the fiscal year, the excess must be applied as determined by HUD.  Such applications determined by HUD may include, but are not limited to, application of the excess payment against the amount of the annual payment for a subsequent fiscal year. The HA must take any actions required by HUD respecting the excess payment, and must, upon   demand by HUD, promptly remit the excess payment to

## 10. HUD Requirements

(a) The HA must comply, and must require owners to comply, with the requirements of the U.S. Housing Act of 1937 and all HUD regulations and other requirements, including any amendments or changes in the law or HUD requirements.

(b) The HA must comply with its HUD-approved administrative plan, equal opportunity housing plan and HUD-approved program funding applications.

(c) The HA must use the program forms required by HUD.

(d) The HA must proceed expeditiously with the programs under this consolidated ACC.

## 11. Use of Program Receipts

(a) The HA must use program receipts to provide decent, safe, and sanitary housing for eligible families in compliance with the U.S. Housing Act of 1937 and all HUD requirements. Program receipts may only be used to pay program expenditures.

(b) The HA must not make any program expenditures, except in accordance with the HUD-approved budget estimate and supporting data for a program.

(c) Interest on the investment of program receipts constitutes program receipts.

(d) If required by HUD, program receipts in excess of current needs must be promptly remitted to HUD or must be invested in accordance with HUD

## 12. Administrative Fee Reserve

(a) The HA must maintain an administrative fee reserve for a program. The HA must credit to the administrative fee reserve the total of:
(1) The amount by which program administrative fees paid by HUD for a fiscal year exceed HA administrative expenses for the fiscal year, plus
(2) Interest earned on the administrative fee reserve.

(b) The HA must use funds in the administrative fee reserve to pay administrative expenses in excess of program receipts. If any funds remain in the administrative fee reserve, the HA may use the administrative reserve funds for other housing purposes if permitted by State and local law.

(c) If the HA is not adequately administering any Section 8 program in accordance with HUD requirements, HUD may:
(1) Direct the HA to use the funds to improve administration of the Section 8 program or for reimbursement of ineligible expenses.
(2) Prohibit HA use of administrative fee reserve funds.

## 13. Depositary

(a) Unless otherwise required or permitted by HUD, all program receipts must be promptly deposited with a financial institution selected as depositary by the HA in accordance with HUD requirements.

(b) The HA must enter an agreement with the depositary institution in the form required by HUD.

(c) The HA may only withdraw deposited program receipts for use in connection with the program in accordance with HUD requirements.

(d) The agreement with the depositary institution must provide that if required under a written notice from HUD to the depositary:
(1) The depositary must not permit any withdrawal of deposited funds by the HA unless withdrawals by the HA are expressly authorized by written notice from HUD to the depositary.
(2) The depositary must permit withdrawals of deposited funds by HUD.

(e) If approved by HUD, the HA may deposit under the depositary agreement monies received or held by the HA in connection with any contract between the HA and HUD.

## 14. Program Records

(a) The HA must maintain complete and accurate books of account and records for a program. The books and records must be in accordance with HUD requirements, and must permit a speedy and effective audit.

(b) The HA must furnish HUD such financial and program reports, records, statements, and documents at such times, in such form, and accompanied by such supporting data as required by HUD.

(c) HUD and the Comptroller General of the United States, or their duly authorized representatives, must have full and free access to all HA offices and facilities, and to all the books, documents and records of the HA relevant to administration of the program, including the right to audit and to make copies.

(d) The HA must engage and pay an independent public accountant to conduct audits that are required by HUD. The cost of audits required by HUD may be charged against program receipts.

## 15. Default by HA

(a) Upon written notice to the HA, HUD may take possession of all or any HA property, rights or interests in connection with a program, including funds held by a depositary, program receipts, and rights or interests

form HUD-52520 (6/93)

under a contract for housing assistance payments with an owner, if HUD determines that:

(1) The HA has failed to comply with any obligations under this consolidated ACC; or

(2) The HA has failed to comply with obligations under a contract for housing assistance payments with an owner, or has failed to take appropriate action, to HUD's satisfaction or as directed by HUD, for enforcement of the HA's rights under a contract for housing assistance payments (including requiring actions by the owner to cure a default, termination, or reduction of housing assistance payments, termination of the contract for housing assistance payments, or recovery of overpayments); or

(2) The HA has made any misrepresentation to HUD of any material fact.

(b) HUD's exercise or non-exercise of any right or remedy under the consolidated ACC is not a waiver of HUD's right to exercise that or any other right or remedy at any time.

## 16. Fidelity Bond Coverage

The HA must carry adequate fidelity bond coverage, as required by HUD, of its officers, agents, or employees handling cash or authorized to sign checks or certify vouchers.

## 17. Exclusion from Program

Single-headed households, pregnant females, and recipients of public assistance may not be excluded from participation in or be denied the benefit of a program because of such status.

## 18. Conflict of Interest Provisions

(a) Neither the HA nor any of its contractors or their subcontractors may enter into any contract, subcontract, or arrangement in connection with a program in which any of the following classes of persons has an interest, direct or indirect, during tenure or for one year thereafter:

(1) Any present or former member or officer of the PHA (except a tenant commissioner).

(2) Any employee of the HA who formulates policy or who influences decisions with respect to a program.

(3) Any public official, member of a governing body, or State of local legislator who exercises functions or

(b) Any member of these classes of persons must disclose the member's interest or prospective interest to the HA and HUD.

(c) The requirements of this section may be waived by HUD for good cause. No person for whom a waiver is granted shall be permitted to exercise responsibilities or functions with respect to a contract for housing assistance payments executed, or to be executed, on

behalf, or with respect to a contract for housing assistance payments to which this person is a party.

(d) The provisions of this section do not apply to the depositary agreement, or to utility service for which the rates are fixed or controlled by a governmental agency.

## 19. Interest of Member of or Delegate to Congress

No member of or delegate to the Congress of the United States of America or resident commissioner shall be admitted to any share or part of this consolidated ACC or to any benefits which may arise from it.

## 20. Exclusion of Third Party Rights

(a) A family that is eligible for housing assistance under this consolidated ACC is not a party to or third party beneficiary of the consolidated ACC.

(b) Nothing in the consolidated ACC shall be construed as creating any right of any third party to enforce any provision of this consolidated ACC, or to assert any claim against HUD or the HA.

## 21. Consolidated ACC

(a) The consolidated ACC is a contract between HUD and the HA.

(b) This consolidated ACC supersedes any previous annual contributions contract for a program. Matters relating to funding or operation of the program under a previous annual contributions contract are governed by this consolidated ACC.

**United States of America**

Secretary of Housing and Urban Development
Signature of Authorized Representative:                                    Date signed:

X _____

Name & Official Title:  (print or type)

**Housing Agency**

Name of Agency:  (print or type)
Lakewood Township
Rental Assistance Program (LTRAP)
Signature of Authorized Represenative:                                    Date signed:

X _Richard L Work_                          10/5/95

Name & Official Title:  (print or type)     RICHARD L. WORK, MAYOR

form HUD-52520  (6/93)

# EXHIBIT B

 **Fax**

8/12/2015

| | |
|---|---|
| From: | Chanda M. Bethea, MBA |
| Phone: | 202-708-1380 |
| Fax: | 202-708-0690 |
| Company Name: | U. S. Department of Housing and Urban Development |
| | |
| To: | Mr. Meir Hertz |
| Phone: | 732-367-0660 |
| Fax: | 732-367-6645 |

**Comments: LTRAP Letter**

Urgent:

Please contact the number listed above once you have received this letter.

☒ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle





U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
WASHINGTON, DC 20410-5000

PRINCIPAL DEPUTY ASSISTANT SECRETARY
FOR PUBLIC AND INDIAN HOUSING

AUG 1 1 2015

Hon. Albert Ackerman,
Mayor, Lakewood Township
231 Third Street
Lakewood, NJ 08701

Meir N. Hertz, CEO
Lakewood Township Residential Assistance Program
600 West Kennedy Blvd.
P.O. Box 856
Lakewood, NJ 08701

**SUBJECT: DETERMINATION OF HCV ACC DEFAULT AND TRANSFER OF THE PROGRAM**

Dear Sirs:

The U.S. Department of Housing and Urban Development (HUD) has determined that the Township of Lakewood[1] (Lakewood) is in default of its Housing Choice Voucher (HCV) Annual Contributions Contract (ACC)[2] with HUD.

First, HUD has determined that Lakewood is in default of its ACC by breaching ¶ 10(a) which requires that: "The [public housing authority (PHA)] must comply . . . with the requirements of the U.S. Housing Act of 1937 and all HUD regulations and other requirements . . . ." *See* Ex. 2. Lakewood did not comply with HUD regulation 24 C.F.R. § 982.158. Section 982.158 contains Lakewood's record keeping responsibilities and its obligations to disclose records and data to HUD, and it requires PHAs to authorize HUD to physically inspect documents or data at the PHA office facility. These regulatory requirements are also contractual and contained in ¶ 14 of Lakewood's ACC. *See* Ex. 2.

Second, HUD has determined that Lakewood is in default because it breached ¶ 14 (a)–(c) of the ACC which requires Lakewood to: (a) maintain complete and accurate books of account and records; (b) furnish HUD those records or data; and, (c) grant HUD or its proxy full and free access to all HA offices and facilities for the purpose of inspecting those records. *See* Ex. 2.

HUD makes the foregoing determination of default based on the following findings:
    i.    In September 2013, HUD's Office of Public and Indian Housing, Quality Assurance Division (QAD) performed an on-site Financial Management

---

[1] *See* Ex. 1, April 14, 2014, letter from Sonia Burgos, Director, Newark Office of Public Housing to Meir Hertz, Executive Director, Lakewood Township Residential Assistance Program (LTRAP). HUD "determined that (1) LTRAP is an operating unit of the [Lakewood Tenants Organization (LTO); and] (2) the Township and the LTO together constitute the PHA in this matter[.]"

[2] Ex. 2. Consolidated Annual Contributions Contract, NJ214-VO-0015 & NJ214-VO-0016 (July, 21, 1998).

     Review of Lakewood's HCV program. As a result of the review, QAD issued a report on December 3, 2013.[1] The report notes that "QAD staff was unable to review the administrative expenses" because "LTRAP refused to furnish the documents." Ex. 3. This "severely hampered [QADs] efforts to conduct a speedy and effective audit of the HCV program." *Id.*

ii.    By letter dated January 2, 2014, Richard Price, Esq. responded to HUD's December 3, 2013, letter, and stated that "once the [administrative] fee is earned by LTO and paid to LTO by Lakewood Township the fee is defederalized and LTO is not accountable to HUD[.]"[4]

iii.    By letter dated February 14, 2014, Mr. Price remitted organizational documents for LTO to HUD after discussions with HUD staff.[5] Based on these documents, review of correspondences, and other information available, HUD determined that the Township and LTO together constitute the PHA of the HCV program run by the Township. *See* Ex. 1.

iv.    Instead of responding to the multiple points provided in the April 14, 2014 letter, LTRAP sent a letter to HUD on June 11, 2014, asking "why any further response is required[,]" relying on purported HUD statements concerning a management review conducted 13 years earlier.[6]

v.    On June 19, 2014, QAD sent a letter to Lakewood scheduling another Financial Management Review beginning July 8, 2014, to review, *among other things*, administrative expenses.[7]

vi.    LTRAP responded on June 20, 2014, once again asserting that "this entire question has been dealt with, cleared and closed in its entirety."[8]

vii.    By letter dated June 25, 2014, counsel for LTO stated that LTO "is not prepared to participate in the proposed on-site review process[.]"[9]

viii.    Contrary to the language in LTRAP's June 25, 2014, letter, Lakewood does not have the legal right to refuse participation in an on-site review process. *See* Ex. 2, ¶ 14 (a)–(c); 24 C.F.R. § 982.158.

ix.    In a letter dated December 5, 2014, from John J. Cahill, HUD's Regional Counsel for New York/New Jersey, HUD demanded that Lakewood allow HUD's QAD to conduct a full Financial Management Review as described in the QAD's letter dated June 19, 2014.[10] HUD informed Lakewood that it must comply with this demand within 30 days. *See* Ex. 10. HUD also advised Lakewood that if it failed to comply with this final demand, it would be considered in default of its ACC and the applicable program regulations. *Id.*

x.    On February 10, 2015, representatives from HUD's Office of Regional Counsel for NY/NJ, Newark Office of Public Housing, and QAD met with

---

[1] Ex. 3. Letter from MaryAnn Creager, Supervisory Program Analyst, QAD, to Meir Hertz, CEO, Lakewood Township RAP (Dec. 3, 2013).
[4] Ex. 4. Letter from Richard M. Price, Esq., Nixon Peabody, to Balu Thumar, Acting Director, Office of Public Housing (Jan. 2, 2014).
[5] Ex. 5. Letter from Richard M. Price, Esq., Nixon Peabody, to Balu Thumar, Acting Director, Office of Public Housing (February 14, 2014).
[6] Ex. 6. Letter from Meir N. Hertz, CEO, LTRAP, to Sonia Burgos, Director, Office of Public Housing (June 11, 2014).
[7] Ex. 7. Letter from Joseph R. Russel, Program Analyst, QAD to Meir Hertz, CEO, LTRAP (June 19, 2014).
[8] Ex. 8. Letter from Meir Hertz, CEO, LTRAP to Joseph R. Russell, Program Analyst, QAD (June 20, 2014).
[9] Ex. 9. Letter from Edward J. Dauber, Esq. to MaryAnn Creager, Supervisory Program Analyst, QAD (June 25, 2014).
[10] Ex. 10. Letter from John J. Cahill, Regional Counsel for NY/NJ to Edward Dauber, Esq., Counsel for LTO/LTRAP (Dec. 5, 2014).

counsel for Lakewood and LTO at Lakewood's request. At this meeting Lakewood's counsel proposed that, to resolve the financial review issues, a reserve could be established moving forward but this proposal would not include access to past records. This proposal was unacceptable as it failed to grant the access all of Lakewood's records. Accordingly, HUD rejected this offer.

xi.   HUD has waited more than 6 months to take action after its last compliance demand date, January 5, 2015. See Ex. 10. HUD has also tried to resolve Lakewood's ACC non-compliance with good faith negotiations. From its actions, HUD can rationally conclude that Lakewood has no intent to comply with its regulatory and contractual responsibilities. HUD will not negotiate terms with Lakewood that would allow it to remain out of compliance with its ACC and applicable regulations.

xii.  Since Lakewood has refused and continues to refuse to provide full access to all of its records at its facility, access that is mandated by ¶ 14 (a)–(c) of its ACC and 24 C.F.R. § 982.158, Lakewood is in default of its ACC.

Now that HUD has determined that Lakewood's ACC is in default, HUD has the authority pursuant to ¶ 15(a) of the ACC to "take possession of all or any HA property, rights or interests in connection with a program, including funds held by a depository, program receipts, and rights or interests under a contract for housing assistance payments with an owner[.]" Ex. 2. Accordingly, HUD will take possession of Lakewood's HCV program, which is comprised of 1,066 units, and transfer them to Lakewood Housing Authority. HUD will also take possession of any accompanying HCV program funds for those 1,066 units. The effective date of the transfer will be September 1, 2015. HUD may also take any other administrative or legal action it deems appropriate.

Sincerely,

Lourdes Castro Ramirez
Principal Deputy Assistant Secretary
for Public and Indian Housing

cc:   Edward J. Dauber, Esq. (via email)
      James T. Massey, Esq. (via email)
      Michael P. Pasquale, Esq. (via email)